IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| WILLIE CHIVES,<br>        Plaintiff, | § § § | |
| v. | § § | No.  EP-20-CV-00155-MAT |
| KILOLO KIJAKAZI,<br>Commissioner of<br>the Social Security<br>Administration,[1]<br>        Defendant. | § § § § § § | |

**MEMORANDUM OPINION AND ORDER**

The instant case is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Willie Chives ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security disability benefits. (ECF No. 1, p. 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. (ECF No. 1-3, p. 1); (ECF No. 6, p. 1); *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision denying benefits will be **AFFIRMED**.

### I.    BACKGROUND

#### A.  Procedural Background

Plaintiff applied for disability insurance benefits on December 28, 2017, alleging disability beginning on December 31, 2015. (ECF No. 9, p. 1); (R. 12).  Plaintiff was sixty-three years old at his hearing date on April 16, 2019, and his past relevant work included civilian military

---

[1] Kilolo Kijakazi replaced former Commissioner Andrew Saul to become the Acting Commissioner of the Social Security Administration in July 2021. *See Acting Commissioner: Dr. Kilolo Kijakazi*, SOCIAL SECURITY, https://www.ssa.gov/agency/commissioner/ (last visited Sep. 3, 2021).

1

education instructor and technical training instructor. (ECF No. 9, p. 1) (R. 99).

The Commissioner initially denied Plaintiff's claim on April 24, 2018, and again upon reconsideration on September 26, 2018. (R. 91). Plaintiff then requested a hearing with the Administrative Law Judge ("ALJ"). *Id.* At the April 16, 2019 video hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert. (R. 91, 109). In the resulting June 18, 2019 opinion, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, finding that "the claimant's subjective allegations and the objective medical evidence support a finding that his osteoarthritis limits the claimant to light work . . . [with] postural and manipulative limitations," and that "[t]he claimant is capable of performing past relevant work as a professional military education instructor." (R. 99-100). The Appeals Council denied Plaintiff's request for review on May 1, 2020, thereby making the ALJ's June 18, 2019 decision the final administrative decision. (R. 1). Plaintiff thereafter filed his Complaint on June 2, 2020. (ECF No. 1).

**B. Standard of Review**

Judicial review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). It is a "highly restrictive" standard, requiring more than a scintilla of evidence, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)); *Thomas v. Colvin*,

669 F. App'x 250, 251 (5th Cir. 2016). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Spellman*, 1 F.3d at 360. Fifth Circuit precedent directs the reviewing district court to apply the harmless error standard in Social Security disability cases, and Plaintiff bears the burden of showing that harmful error warrants remand. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### C. Commissioner's Evaluation Process

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity." 20 C.F.R. § 404.1520(a)(4); *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

Courts employ four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462. A court may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Indeed, it is the Commissioner, not the court, who must resolve evidentiary conflicts. *Spellman*, 1 F.3d at 360.

### D. The ALJ's Findings

In her written decision, the ALJ analyzed Plaintiff's claim for disability application under the five-step evaluation process. (R. 93-100). First, the ALJ found that Plaintiff had not worked in a substantial gainful manner since the alleged onset date. (R. 93). Second, the ALJ found that

Plaintiff had the severe impairment of osteoarthritis of his knees and right shoulder. *Id.*[2] Third, Plaintiff was not found to have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 96). Prior to step four, the ALJ formulated Plaintiff's RFC, finding that he "has the [RFC] to perform light work as defined in 20 C.F.R. § 404.1567(b), except he can frequently stoop or crouch; occasionally balance, kneel, crawl, reach overhead, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds." *Id.* At step four, Plaintiff was deemed to be able to perform past relevant work as a professional military education instructor as generally performed. (R. 99). In conclusion, the ALJ found that Plaintiff had not been under a disability per the Social Security Act from the alleged onset date of December 31, 2015 through the instant decision date. (R. 100).

## II.   ANALYSIS

In this appeal, Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. (ECF No. 9, p. 2). Plaintiff alleges that the ALJ erred in disregarding evidence that Plaintiff's mental health impairments and hypertensive cardiovascular disease ("HCD") are severe impairments, rendering the RFC finding unsupported by substantial evidence.[3] *Id.* The Commissioner argues that substantial evidence supports the RFC, as the ALJ properly considered the medical evidence of Plaintiff's cardiovascular condition and

---

[2] The ALJ declined to find that the following claimed impairments were severe under step two: obstructive sleep apnea, hypertension and hyperlipidemia, vitamin D deficiency, tinnitus, and mental impairments of depression, anxiety, and alcohol use disorder. (R. 94).

[3] While Plaintiff begins by arguing that his HCD and mental impairments are "severe," the substance of his brief does not address "severe" impairments as a term of art in the Social Security context. (ECF No. 9, p. 2). Rather, Plaintiff's analysis largely concerns the RFC determination in the context of substantial evidence review, and thus the Court structures this Opinion under that framework. (ECF. No. 9, p. 3-5). The Court notes that when an ALJ does not find a claimant's condition to be severe, but does continue the analysis to discuss and include the condition in the claimant's RFC, any step two error is deemed harmless. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) ("Even if an impairment is deemed 'severe' ... this fact does not require a remand when the Secretary has gone beyond the second step, as here, as not all 'severe' impairments are disabling."). Here, the ALJ did consider whether Plaintiff's hypertension and mental health conditions were severe impairments at step two, and after review of the record concluded they were not severe. (R. 94-95). The ALJ then considered these, along with other impairments, when formulating the light work RFC. (R. 96-98). Thus, the Court finds that any alleged error at step two is harmless.

4

mental health impairments in assessing the light work RFC with limitations. (ECF No. 11, p. 1, 3, 6); (R. 99).

An individual's RFC is the most the individual can do on a regular and continuing basis despite limitations due to the impairment. 20 C.F.R. § 404.1545(a); SSR 96-8p. An RFC finding is not a medical determination, but rather an administrative assessment based on all relevant evidence. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). All medically determinable impairments will be considered in the RFC assessment, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2). An RFC finding is used to determine whether the claimant can still do his past work. *Perez*, 415 F.3d at 462. If not, then the RFC finding is used to assess whether the claimant can do other jobs in the national economy. *Id.*

The Court will address each argument Plaintiff raises in turn below.

### A. Substantial evidence supports the RFC determination because the ALJ did not disregard medical evidence of HCD.

Plaintiff argues that the ALJ did not consider his HCD alone or in combination, and the ALJ failed to discuss medical evidence of same. (ECF No. 9, p, 3, 5). He alleges that the ALJ "summarily dismissed" this claimed impairment with "standard boilerplate language." *Id.* at 4. However, the record does not support Plaintiff's assertion.

The ALJ did indeed consider and discuss the medical evidence of Plaintiff's cardiovascular condition, even if not using the specific term "HCD." [4] In her written decision, the ALJ discussed Plaintiff's hypertension at length. The ALJ noted that Plaintiff's hypertension was well-controlled

---

[4] The Court notes that a diagnosis of HCD alone does not establish a severe or disabling impairment. *See Harrell v. Brown*, 862 F.2d 471, 481 (5th Cir. 1988); *Singleton v. Comm'r, Soc. Sec. Admin*, No. 6:20-cv-00931, 2021 WL 5239980, at *11 (W.D. La. Aug. 3, 2021), *report and recommendation adopted.*, *Singleton v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-00931, 2021 WL 5237297 (W.D. La. Nov. 10, 2021) ("[I]t is axiomatic that a diagnosis is not sufficient to establish that an impairment is severe, to establish that an impairment meets or equals a listing, or to establish that an impairment is disabling."); 20 C.F.R. § 220.110(b).

with medication and cited medical record exhibits documenting this. (R. 94). The Court's review of the record also supports proper hypertension management and lack of associated pain or discomfort. (R. 369, 386, 429, 439, 446, 467, 515, 609). Moreover, at the hearing, Plaintiff stated that his high blood pressure is controlled with medication. (R. 120). When the ALJ asked if there was anything else Plaintiff wanted to raise, Plaintiff said there was not. (R. 128). The hearing testimony also affirms what Plaintiff told Dr. Bustamante in 2018: "the claimants reports a history of high blood pressure since 1997. He has been treated with medication since diagnosis and states that this does manage his blood pressure well." (R. 520).

To the extent Plaintiff may seek to assign error based on the specific medical term "hypertension cardiovascular disease" used in the Veteran Affairs ("VA") medical records, the Court finds that the record also does not support this contention. As of March 27, 2017, any VA disability finding is not binding upon the Commissioner, nor deserving of special weight. 20 C.F.R. § 404.1504. The VA had previously determined that Plaintiff's rated disabilities included "hypertensive heart disease (30%)."[5] (ECF No. 11, p. 3) (citing R. 366, 573, 575, 620). Plaintiff's application was filed after this regulation took effect,[6] so the VA rating has no bearing here. Accordingly, the ALJ concluded that "the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding." (R. 98). Similarly, the Commissioner argued that the VA rating lacks merit. (ECF No. 11, p. 3, 8). The Court observes that these VA records do not explain why the HCD allegedly causes disability, or how the VA arrived at the thirty percent figure. More significantly, however, is the failure of the

---

[5] This rating appears in the VA records under a section titled "Service Connection/Rated Disabilities." (R. 366, 573, 575). Under that general heading appears a subsection reading "SC Percent: 70%". *Id.* Then, another subsection titled "Rated Disabilities" lists the following conditions: "Hypertensive Heart Disease (30%)[,] Sleep Apnea Syndrome (50%) [,] Clavicle Or Scapula, Impairment Of (10%)." *Id.*
[6] Plaintiff filed his disability application on December 28, 2017. (R. 12).

Plaintiff's brief to address how HCD meaningfully differs from Plaintiff's hypertension diagnosis the ALJ analyzed in her decision. (R. 94).

To the extent Plaintiff alleges that concentration and walking issues from HCD render him fully disabled, the record does not support these arguments. First, the ALJ and the Commissioner cited medical evidence and opinions that consistently showed Plaintiff could walk and otherwise ambulate without issue. (R. 97-98); (ECF No. 11, p. 4) (citing R. 354, 359, 434, 486, 494-95, 512, 523, 525, 531 637, 644, 649-50, 656). In fact, during the hearing, Plaintiff testified that his purported inability to walk more than twenty minutes was due to knee pain, not heart issues.[7] (R. 116-17).

Second, the ALJ and Commissioner reference medical records documenting that Plaintiff regularly displayed normal memory and thought process. (R. 94); (ECF No. 11, p. 5) (citing R. 355, 359, 583-84). Notably, a 2018 psychological examination noted that: Plaintiff's "cognitive functions appeared grossly intact . . . [a]ttention and concentration appeared within normal limits . . . [and] [l]ong term memory seemed grossly intact." (R. 531). Any alleged concentration issues arise from sources other than HCD. Plaintiff states that his lack of concentration is "due to lack of sleep and the different meds," and reports that doctors attribute the root of this fatigue to aging. (R. 121). Moreover, the Court notes that Plaintiff's fatigue stemmed largely from his shoulder pain and sleep apnea, controlled through CPAP treatment. (R. 93, 94, 118).[8]

Thus, Plaintiff's claim that HCD caused problems with walking and concentration is not

---

[7] The ALJ accounted for this knee pain in finding that Plaintiff's osteoarthritis of the knees was a severe impairment. (R. 93).

[8] Recently, routine vitamin B12 injections satisfactorily managed Plaintiff's fatigue. (R. 15-16, 21, 58). In fact, the records states that "[p]atient very thankful for discussion of results [of injections] and management, in agreement with care plan," and "[p]atient states he feels injections are helping well at this time with his fatigue and would like to continue injections." (R. 15, 21). Although these records were submitted to the Appeals Council as part of the request for review after the June 18, 2019 ALJ decision, and as such the Appeals Council declined to consider them, the Court takes judicial notice that they form part of the transcript submitted to the Court as part of this appeal. (R. 2).

substantiated in the record. For these reasons, the Court finds that substantial evidence supports the ALJ's RFC determination as it relates to Plaintiff's HCD argument.

**B. Substantial evidence supports the RFC determination because the ALJ did not disregard medical evidence of mental health impairments.**

Plaintiff also argues that the ALJ failed to incorporate medical evidence of his mental health conditions as a severe impairment, rendering the RFC determination flawed. (ECF No. 9, p. 2-3). Plaintiff contends that his depression and anxiety hurt his ability to concentrate, and that the ALJ "dismissed the mental health disorders as a mild limitation without citing relevant medical evidence or without an adequate explanation of the severity or effect pursuant to 20 C.F.R. § 404.1520(a)" *Id.* at 3. A special set of criteria is used to determine whether mental impairments rise to the level of severe. 20 C.F.R. § 404.1520a(a). The special criteria evaluate a claimant's functional limitation in four broad functional areas: (1) understanding, remembering, or applying information, (2) interacting and relating with others, (3) concentrating, persisting, and maintaining pace, and (4) adapting and managing oneself. *Id.* § 404.1520a(c)(3). If the degree of limitation is rated as "mild" or better in each category, the impairment is generally not severe. *Id.* § 404.1520a(d)(1).

The record does not support Plaintiff's arguments. The ALJ carefully assessed Plaintiff's claimed mental impairments under the specialized criteria for evaluating such conditions. 20 C.F.R. § 404.1520a; (R. 94). Applying this psychiatric test, the ALJ found that Plaintiff had mild limitations with respect to the first three categories,[9] and no limitation with respect to the fourth.[10] The ALJ considered Plaintiff's stated abilities to do daily tasks like take medications, go to appointments, shop, drive, pay bills, watch TV, read, spend time with family and friends, obey

---

[9] The first three categories are (1) understanding, remembering, or applying information, (2) interacting with others, and (3) ability to concentrate, persist, or maintain pace. (R. 94, 95).
[10] The fourth category is the ability to adapt or manage oneself. (R. 95).

8

authority, co-exist with others, and narrate his work and medical history. (R. 94-95). Further, Plaintiff appeared pleasant, cooperative, and appropriately groomed, interacted socially without incident, and completed testing without disruption. *Id.* These observations, supported by the medical records and testimony, cast doubt on Plaintiff's contention that he struggled with remembering, getting along with others, concentrating, and managing his moods. *Id.*

Further, the Court finds that Plaintiff's brief is devoid of any critique of the ALJ's application of the special psychiatric criteria in general, or of any one of the four categories in particular. Plaintiff fails to address the specialized psychiatric criteria outlined in 20 C.F.R. § 404.1520a at all. Instead, he makes conclusory arguments that Plaintiff was diagnosed with mental health conditions, which allegedly impaired his concentration and made him tired. (ECF No. 9, p 3). Thus, the Court cannot meaningfully evaluate how Plaintiff believes the ALJ may have erred in this regard. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (holding that a court should "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that [she] was prejudiced in any way by the deficienc[y] [she] alleges.").

Here, the medical records and expert reports support the ALJ's mental impairment determination. Provider notes throughout the record often reference Plaintiff showing a normal psychological state, lacking demonstrable symptoms of depression and anxiety, and not requiring medication. (R. 355, 359, 434-5, 447, 450, 456, 485, 494, 496, 554). The only references to counseling or therapy appear in the context of marriage issues. (R. 583). While Plaintiff complained of feeling depressed and forgetting things to consultative psychologist Dr. James Schutte, Dr. Schutte deemed it "nothing serious." (R. 531). State medical consultants further opined that the mental impairments caused mild limitations at most, which was "consistent with the lack of abnormal psychological evaluations or record of mental health treatment." (R. 95).

Finally, Plaintiff's own testimony fails to bolster his position. Most significantly, Plaintiff confirmed he does not take any medications, nor see any counselor or therapist, for his depression or anxiety. (R. 122). This undermines his disability claim on the basis of mental health. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (allowing the ALJ to rely on Plaintiff's lack of medication or prescribed course of treatment for his back pain as an indication of non-disability). Further, Plaintiff alleges that he can only concentrate about thirty minutes due to mental health. (R. 116, 12-22). However, when asked what triggers his depression and anxiety, Plaintiff answered lack of sleep and concentration, which stems from other issues as previously discussed. (R. 122). This muddled approach to the interaction between his mental health conditions and fatigue/concentration is summed up by Plaintiff's statement that his subjective perpetual fatigue "breaks down [his] morale" and leaves him with "very little self-esteem." *Id*. The ALJ did account for Plaintiff's fatigue in her analysis of Plaintiff's managed sleep apnea and shoulder pain, noting that "the record shows little in the way of treatment for fatigue, as it is rarely in the treatment notes." (R. 93-94). As such, Plaintiff's own account of his mental health conditions do not support Plaintiff's argument that the RFC improperly accounts for mental impairments.

For the above reasons, the Court finds that substantial evidence supports the ALJ's RFC determination as it relates to Plaintiff's mental impairment argument.

### C. Plaintiff's arguments regarding prejudicial error and treating physician opinions are inapplicable to this analysis.

Finally, the Court notes that Plaintiff makes insufficiently specific arguments pertaining to legal error. First, Plaintiff appears to allege that prejudice exists because the ALJ failed to develop the facts during the hearing, and if she had then she might have reached a different decision. (ECF No. 9, p. 4). The Court construes this as an argument that the ALJ committed harmful error warranting remand. *Shinseki*, 556 U.S. at 407-08; *Jones*, 691 F.3d at 734. However, Plaintiff fails

10

to supplement his legal assertions with factual background or citations, which leaves the Court with no argument to consider. *Hardman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016) (internal citations omitted) (stating that "[a] party must 'press and not merely intimate the argument during proceedings before the district court.'"). But, even if Plaintiff had expanded his claims, the record demonstrates that the ALJ did amply develop the facts relating to Plaintiff's disability claims.

Second, Plaintiff mentions that the ALJ rejected medical evidence without contradictory evidence from a medical expert. (ECF No. 9, p. 5). Again, Plaintiff fails to either identify which evidence the ALJ supposedly rejected, or provide argument as to why Plaintiff believed it was error.[11] *Id.*

For these reasons, the Court finds that the ALJ's finding is not the result of legal error.

### III.    CONCLUSION

In sum, the Court finds that Plaintiff has not demonstrated that the ALJ disregarded evidence of HCD and mental impairments in formulating the RFC such that he cannot perform the requirements of light work with postural and manipulative limitations. The Court also finds that Plaintiff's arguments regarding legal error fail as well. The Court further finds that the ALJ properly considered the objective medical evidence, Plaintiff's own testimonial evidence, and vocational expert testimony in reaching her decision. Accordingly, the Court finds that substantial evidence supports the ALJ's findings regarding Plaintiff's RFC, and that the ALJ applied the correct legal standards.

For the foregoing reasons, **IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits will be **AFFIRMED**.

---

[11] Notwithstanding, the Court recognizes that this "treating physician rule" no longer applies, given the March 27, 2017 regulation specifically prohibiting deference or evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a); (ECF No. 11, p. 7). Plaintiff filed his disability application on December 28, 2017, after this regulation went into effect. (R. 91). Thus, the Court will not parse out any argument Plaintiff intends in this regard.

**SIGNED** and **ENTERED** this __31_ day of March, 2022.

                              *[signature: Miguel A. Torres]*

**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**